UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA        :

   - v. -                                          :

                                            S1 10 Cr. 625

REZA SAFARHA,                       :
    a/k/a "Ali,"
    a/k/a "Ali Safarha,"             :

        Defendant.                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**GOVERNMENT'S SENTENCING MEMORANDUM**

The Government respectfully submits this Memorandum in connection with the defendant's sentencing, scheduled for June 3, 2011. As discussed below, we agree with Probation that the advisory sentencing range under the United States Sentencing Guidelines (the "Sentencing Guidelines" or "U.S.S.G") is 78 to 97 months' imprisonment. For the reasons set forth below, a substantial prison term is warranted by the factors set forth in Title 18, United States Code, Section 3553(a). However, the Government acknowledges that a sentence within the advisory Guidelines range may be more than necessary to accomplish the objectives of Section 3553(a), and that some reduction from the advisory range may be warranted by the particular facts of this case. The Government will address forfeiture in separate filings.

A.   The Sentencing Guidelines Calculations

As the Court is aware, there are multiple theories encompassed by the defendant's five counts of conviction. The IEEPA theories in the case are grouped together for Guidelines purposes because they "involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan."[1] U.S.S.G. § 3D1.2(b). In addition, to the extent the money laundering theories in the case involve an underlying specified unlawful activity that the defendant also committed, the money laundering and IEEPA charges are grouped together pursuant to U.S.S.G. §§ 2S1.1 Application Note 6 and 3D1.2(c). The Theft of Government Money conviction (Count Six) constitutes its own group. Set forth in the following table are the theories in the case, the Guidelines applicable to the theory, and the resulting offense level. Further analysis follows the table.

| Count | Charge | Theory | Guideline | Offense Level |
|---|---|---|---|---|
| One | IEEPA Conspiracy | Financial Services IEEPA Violation | 2M5.1(a)(1) | 26 |
| Two | IEEPA | Financial Services IEEPA Violation | 2M5.1(a)(1) | 26 |
| Three | Money Laundering Conspiracy | Money Laundering Sting to Promote New Investment in Iran | 2S1.1(a)(2), (b)(1), (b)(2)(B) | 28 |

---

[1] Pursuant to application note 2 to Section 3D1.2, the "societal interests that are harmed" by the different IEEPA theories "are closely related," and the offenses involve the "same victim" under Section 3D1.2(b).

2

|      |                   | Money Laundering Sting to Conceal                     | 2S1.1(a)(2), (b)(2)(B)                                              | 20       |
|------|-------------------|-------------------------------------------------------|---------------------------------------------------------------------|----------|
|      |                   | Foreign Transfer to Promote New Investment in Iran    | 2S1.1(a)(2), (b)(1), (b)(2)(B); or 2S1.1(a)(1), 2M5.1(a)(1)         | 28       |
| Four | Money Laundering  | Money Laundering Sting to Promote New Investment in Iran | 2S1.1(a)(2), (b)(1), (b)(2)(B)                                   | 28       |
|      |                   | Money Laundering Sting to Conceal                     | 2S1.1(a)(2), (b)(2)(B)                                              | 20       |
|      |                   | Foreign Transfer to Promote New Investment in Iran    | 2S1.1(a)(2), (b)(1), (b)(2)(B); or 2S1.1(a)(1), 2M5.1(a)(1)         | 28       |
| Six  | Theft of Gov't Money | Theft of Undercover Funds                          | 2B1.1(a)(2), (b)(1)(C) or (E)                                       | 10 or 14 |

1. **Analysis of U.S.S.G § 2M5.1(a)(1)**

With respect to the Guidelines calculation pursuant to § 2M5.1, subsection (a) provides for an offense level 26 in either of two circumstances: "if (A) national security controls . . . were evaded; or (B) the offense involved a financial transaction with a country supporting international terrorism." U.S.S.G.§ 2M5.1(a). The Government

3

submits that this provision applies because the Iran Trade Embargo is a "national security control."[2]

Although the Second Circuit has not addressed the issue,[3] courts that have done so have made clear that a trade embargo against a state sponsor of terrorism "is intended as a national security control" for the purposes of Section 2M5.1(a)(1)(A). *See United States* v. *McKeeve*, 131 F.3d 1, 14 (1st Cir. 1997) (addressing embargo against Libya); *accord United States* v. *Elashyi,* 554 F.3d 480, 508-09 (5th Cir. 2008) ("Every court to consider the issue has held that the evasion of sanctions against state sponsors of terrorism are 'national security controls'"); *United States* v. *Banki*, 10 Cr. 08 (JFK) (Aug. 16, 2010) (sentencing proceedings; Judge Keenan adopted offense level 26 without specifying which portion of 2M5.1(a)(1) applied), *appeal pending* No. 10-3381 (2d Cir.); *United States* v. *Sevilla*, No. 04 CR 0171, 2006 WL 3486872, at *2 (N.D. Ill. Nov. 29,

---

[2]Although Iran is a designated "country supporting international terrorism," *see* 49 Fed. Reg. 2836-02 (Jan. 23, 1984) (Secretary of State's designation of Iran as a state sponsor of terrorism, pursuant to the Export Administration Act), we have found only one case that has applied (a)(1)(B) to a situation where a transaction involved the territory of a "country supporting international terrorism," but where the transaction itself is not "with" that country in the sense that the country itself is a party to the transaction. *See United States* v. *Groos*, 2008 WL 5387852, at *3 (N.D. Ill. 2008) (Section 2M5.1(a)(1)(B) applied to shipments of fire sprinkler equipment to a company in Iran because "the U.S. government classifies Iran a state sponsor of terrorism and has done so for some time"). Thus, because there is some question about whether this subsection applies, and because subsection (a)(1)(A) clearly applies as discussed in the text, the Government does not here rely on U.S.S.G. § 2M5.1(a)(1)(B) to reach offense level 26.

[3]This issue is presented in the case of *United States* v. *Banki*, No. 10-3381 (2d Cir.), which has been fully briefed and argued, but not decided.

4

2006) (addressing Iran embargo); *United States* v. *Min*, No. 99 Cr. 875 (KTD), 2000 WL 1576890 (S.D.N.Y. Oct. 23, 2000) (Duffy, J.) (North Korea). This is so even if the offending transactions are otherwise "innocent." *See, e.g.*, *United States* v. *McKeeve*, 131 F.3d at 14 ("[S]ection 2M5.1(a)(1) applies to any offense that involves a shipment (or proposed shipment) that offends the embargo, whether or not the goods shipped actually are intended for some innocent use"); *United States* v. *Min*, 2000 WL 1576890, at *2 (defendant's "assertion that the goods in question do not threaten 'national security' is misplaced").

The statute under which Safarha was charged in the IEEPA Counts grants to the President of the United States a broad spectrum of powers necessary to "deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to *the national security*, foreign policy, or economy of the United States. . . ." 50 U.S.C. § 1701(a) (emphasis added). The Executive Order related to the Embargo states that "the actions and policies of the Government of Iran constitute an unusual and extraordinary threat to *the national security*, foreign policy, and economy of the United States." Exec. Order 12957 (emphasis added); *see also* 49 Fed. Reg. 2836-02 (Jan. 23, 1984) (Secretary of State's designation of Iran as a state sponsor of terrorism, pursuant to the Export Administration Act). Accordingly, the Embargo against Iran is a national security control, and Safarha's willful evasion of the Embargo properly triggered the application of Guidelines Section 2M5.1(a)(1)(A).

5

## 2. Analysis of U.S.S.G. § 2S1.1

The application of the money laundering Guideline presents a complex issue of interpretation that need not be resolved in the event the Court decides that a below-Guidelines sentence is appropriate here. The issue relates to the applicability of Section 2S1.1(a)(1) to a case involving the foreign transfer prong of the money laundering statute — 18 U.S.C. § 1956(a)(2). Under this prong of the money laundering statute, the funds transferred need not be the proceeds of — or in the language of the Guideline, "derived" from — a specified unlawful activity; the funds need only be transferred internationally in order to promote a specified unlawful activity. As the Court has found, the defendant here violated this prong of the money laundering statute. In addition, the evidence at trial established that the defendant committed the crime his foreign transfers were designed to promote — namely he attempted to participate in making a new investment in Iran. (It is only an attempt because, unbeknownst to the defendant, his partner in the proposed investment was a cooperator who did not in fact make an investment in Iran).

The applicable Guideline was revised in 2001 because under the prior version, "the offense level was determined without sufficient consideration of the defendant's involvement in, or the relative seriousness of, the underlying offense." U.S.S.G. App. C, amend. 634, at vol. 2, p. 227. Given this expressed intent, it is reasonable to interpret § 2S1.1(a)(1) as applying to Safarha's situation — that is, to a

defendant who commits the foreign transfer version of money laundering as well as the relevant specified unlawful activity that the transfer was designed to promote. Indeed, Probation has analyzed the Guideline in this way. On the other hand, the Guideline's use of the words "from which the laundered funds were derived" might be read as precluding application of § 2S1.1(a)(1) in a foreign transfer money laundering case, where the derivation of the funds is immaterial. The Second Circuit has not interpreted this Guideline provision in a foreign transfer money laundering case, but it has vacated a sentence in this situation and noted that the District Court on remand need not decide this issue. *See United States* v. *Dhafir*, 577 F.3d 411 (2d Cir. 2009) (vacating sentence for consideration of more flexible approach suggested in *United States* v. *Crosby*, 397 F3d 103, 112 (2d Cir. 2005)).[4]

If Section 2S1.1 does not apply, the offense level is nevertheless the same. Under this interpretation, the base offense level is 8, plus 12 because the value of the laundered funds is greater than $200,000 but less than $400,000. *See* U.S.S.G. §§ 2S1.1(a)(2) and 2B1.1(b)(1)(G). Pursuant to Section 2S1.1(b)(1), 6 levels are added because Safarha knew and believed that the laundered funds were intended to promote "an offense involving . . . national security." U.S.S.G. § 2S1.1(b)(1)(B)(iii). For the

---

[4] In *Dhafir*, the issue was complicated by the fact that the Government had taken inconsistent positions — at trial, it argued that the money transferred was derived from underlying crimes, and at sentencing it argued that it was not. *Dhafir*, 577 F.3d at 414-415. In addition, in *Dhafir*, application of Section 2S1.1(a)(1) resulted in an offense level four levels lower than under Section 2S1.1(a)(2). *Id.* at 414 n.2.

reasons stated above in the analysis of Section 2M5.1, the offense involves national security because the Embargo violated by Safarha is designed to address an "extraordinary threat to the national security" of the United States. *See, e.g.*, Exec. Order 12957 (emphasis added). Finally, pursuant to Section 2S1.1(b)(2)(B), 2 levels are added because the defendant was convicted under 18 U.S.C. § 1956. Thus, the offense level is 28 regardless of whether Safarha is treated as having committed the underlying crime or not.[5]

### 3. Analysis of the Theft Count

The defendant was also convicted of theft, regardless of whether Safarha is treated as stealing the more than $10,000 he admitted (to Annette and the agents), or the approximately $60,000 that was not returned to the Government, this count does not affect the applicable Guideline range because it is more than 9 levels less serious than the money laundering/IEEPA group. *See* U.S.S.G. § 3D1.4(c).

### 4. Guidelines Range

Based on the foregoing calculations, the offense level applicable to Counts One through Four is 28 — the higher of the offense levels applicable to the IEEPA Counts and the money laundering Counts. *See* U.S.S.G. § 3D1.3. In Criminal History Category I, this yields a Guidelines sentencing range of 78 to 97 months' imprisonment.

---

[5] With respect to the money laundering sting crimes Safarha committed, Safarha did not commit the underlying crime — Interstate Transportation of Stolen Property.

No departures from the applicable Guidelines range are warranted.

**B.  Analysis of Factors Set Forth In Title 18, United States Code, Section 3553(a)**

Section 3553(a) requires the sentencing Court to consider, *inter alia*, "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); "the need for the sentence imposed to reflect the seriousness of the offense," and provide just punishment, 18 U.S.C. § 3553(a)(2)(A), to provide general and specific deterrence, 18 U.S.C. § 3553(a)(2)(B-C), and to provide any treatment or training the defendant may need, 18 U.S.C. § 3553(a)(2)(D); the sentencing range provided for in the Sentencing Guidelines, 18 U.S.C. § 3553(a)(4-5); and "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The statute further requires that the sentence imposed be "sufficient, but not greater than necessary," to comply with the foregoing purposes of sentencing.

As discussed below, the application of certain of these considerations to the facts of Safarha's case may warrant some variance from the Guidelines sentencing range of 78 to 97 months. However, the same factors warrant a substantial term of imprisonment.

**1.  The Nature and Circumstances of the Offense
and the History and Characteristics of the Defendant**

Safarha's criminal conduct in this case was serious: he willfully and eagerly facilitated the transmission of hundreds of thousands of dollars to Iran, a country that

9

sponsors terrorism and that is subject to a comprehensive Embargo because of the extraordinary threat it presents. Moreover, he transferred money even though he believed the money was criminal proceeds and in order to conceal that money. He made the transfers through the hawala system, which by its nature evades controls and regulations designed to ensure that criminals and terrorists do not have easy access to funds. And he did it expressly to make new investments in Iran. This – the strengthening of the economy of a country that supports international terrorism – is exactly what the Embargo was designed to avoid. *See Homa International Trading Corp.*, 387 at 146 ("The obvious purpose of the order is to isolate Iran from trade with the United States . . . . This broad export ban reflected the President's appraisal of the nation's interest in *sanctioning Iran's sponsorship of international terrorism*, its frustration of the Middle East peace process, and its pursuit of weapons of mass destruction" (emphasis added)).

On the other hand, this is Safarha's first arrest and conviction, and his history seems to be characterized by bona fide efforts to provide for himself and his family through his legitimate carpet business.

### 2. The Need for the Sentence to Serve as a Deterrent

There is no reason to believe that Safarha poses a substantial risk of recidivism. Nor is there any need for the defendant to receive any particular training or treatment. *See* 18 U.S.C. § 3553(a)(2)(D). However, in light of the seriousness and secretiveness of the defendant's crime, the sentence imposed also has a significant

general deterrent purpose. 18 U.S.C. § 3553(a)(2)(B-C). By its very nature, the hawala system is difficult to detect and trace, and therefore there is a relatively low likelihood that persons using the hawala system to evade national security controls like the Embargo or to launder the proceeds of crime will ever be caught and successfully prosecuted. In addition, for crimes like the defendant's, which require proof of willfulness — the violation of a known legal duty — the likelihood of successful prosecution is lower than for general intent crimes. Under these circumstances, therefore, the relatively low likelihood of punishment must be offset with relatively higher punishment in order to achieve deterrence.

**3.    The Need to Avoid Unwarranted Sentencing Disparities**

In cases comparable to this one, defendants have received quite significant sentences. For example:

- In *United States* v. *Banki*, 10 Cr. 08 (JFK), Judge Keenan imposed a below-Guidelines sentence of 30 months' imprisonment on Banki — who transferred at least $3.4 million to Iran through the hawala system and lied to the Office of Foreign Assets Control about the conduct. Banki was a consultant at McKinsey at the time. The Guidelines range was 78 to 97 months' imprisonment.

- *United States* v. *Hossein Esfahani*, 05 Cr. 00255 ((N.D. Ill.), the defendant pled, pursuant to a plea agreement, to one count of operating an unlicensed

11

money transmitting business, in violation of Title 18, United States Code, Section 1960, and one count of violating IEEPA, in violation of Title 50, United States Code, Section 1705 (dkt # 62, 63). In that case, the defendant caused approximately $3.9 million to be transferred from the United States to Iran without a license and in violation of the embargo (dkt # 23). The defendant in that case — who did not proceed to trial — was sentenced to a Guideline sentence of 46 months' imprisonment (dkt #75).

- In *United States* v. *Dawn Hanna*, 07 Cr. 20355 (E.D. Mich.), the defendant was convicted after trial of conspiracy to violate IEEPA, several substantive counts of violating IEEPA, one count of money laundering, and one false statements count in connection with her provision of approximately $1 million in telecommunications equipment to Iraq (*see* dkt # 3). The court sentenced the defendant to a total of 72 months' imprisonment (dkt # 79) (below the Guidelines sentence urged by the Government).

- In *United States* v. *Amirnazi*, 08 Cr. 00429 (E.D. Pa.), the defendant was convicted of, among other things, conspiracy to violate IEEPA and a substantive count of violating IEEPA for having engaged in transactions with Iranian companies (more specifically, providing database and software services to such companies) (*see* dkt # 36). The defendant was sentenced to

a term of 48 months' imprisonment (dkt # 184) (below the guidelines sentence urged by the Government).

- In *United States* v. *Laura Wang-Woodford*, 03 Cr. 00070 (E.D.N.Y.), the defendant pleaded guilty to one count of conspiring to violate IEEPA for her involvement in shipping aircraft component parts to Iran through other countries, and was sentenced to 46 months' incarceration (the upper range of the stipulated 37-46 months contained in the parties' plea agreement) (dkt # 63, at p.1).

- In *United States* v. *Rafil Dhafir*, 03 Cr. 00064 (N.D.N.Y.), the defendant was convicted following trial of, among other things, conspiracy to violate IEEPA, and was sentenced to 264 months' imprisonment, including a term of 60 months on the IEEPA Count (dkt # 560). (While the sentence was later vacated on appeal and remanded for re-sentencing, the basis for that order was to allow the district court to consider a flexible approach where there was some ambiguity as to which Guidelines provision should apply to the money laundering case. *See United States* v. *Dhafir*, 577 F.3d 411 (2d Cir. 2009). Indeed, the Second Circuit specifically noted that it did not hold that the district court had applied to wrong money laundering Guideline "or that the sentence was unreasonable." *Id*. at 415.)

From these and other cases, it is apparent that a sentence within the Guidelines range would not necessarily be disparate with those imposed on similarly situated defendants; nor would a below-Guidelines sentence.

### 4. The Appropriate Sentence in this Case

The Guidelines recommend a sentence of at least six and a half years for Safarha's offenses. On the other hand, as noted by the defendant, he did not take the opportunity he was given to accept responsibility for a small subset of his criminal conduct (laundering $30,000 of cash that he believed represented the proceeds of the sale of stolen computers) and receive a stipulated Guideline range of 10-16 months' imprisonment. (If convicted after trial of just this subset, Safarha's range would be 15-21 months' imprisonment).

However, this may be, in the Government's view, one of those rare cases in which the Guidelines-recommended sentence would be more than necessary to accomplish the purposes of sentencing as set forth in Section 3553(a)(2). *See* 18 U.S.C. § 3553(a) (sentence should be "sufficient, but not greater than necessary, to comply with the purposes" of sentencing). Clearly the seriousness of the defendant's crimes and the need for general deterrence require a substantial sentence of imprisonment, and the defense's request for a sentence of time served is too lenient. At the same time, the considerations set forth in Section 3553(a), as applied to the unique facts of this case and this defendant may carry sufficient mitigating weight to warrant a deviation from the

Guidelines sentencing range. The Court may do so and still impose a substantial term of imprisonment that provides just punishment for the offense and adequate general deterrence.

Dated:   New York, New York
         May 27, 2011

                                    PREET BHARARA
                                    United States Attorney
                                    Southern District of New York

                           By:      /s/ JUSTIN S. WEDDLE
                                    JUSTIN S. WEDDLE
                                    MICHAEL FERRARA
                                    Assistant U.S. Attorneys
                                    212-637-2312 / -2526

## CERTIFICATE OF SERVICE

The undersigned attorney, duly admitted to practice before this Court, hereby certifies that on the below date, he served or caused to be served the following document in the manner indicated:

Government's Sentencing Memorandum

Service via Clerk's Notice of Electronic Filing upon the following attorneys, who are Filing Users in this case:

Adrian L. Diluzio, Esq.

Dated: New York, New York
      May 27, 2011

Respectfully submitted,

/s/ JUSTIN S. WEDDLE
Assistant U.S. Attorney